IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| A.T. (a minor), | Case No.: C2-06-802 |
| Plaintiff, | Judge Graham |
| v. | Magistrate Judge Abel |
| City of Columbus, et al., | |
| Defendants. | |

OPINION AND ORDER

This matter is before the Court on a motion for summary judgment, pursuant to Fed. R. Civ. 56(c) filed by Defendants City of Columbus (City), Officer Deryl Kowalski (Kowalski) and Officer James France (France).  Plaintiff is A.T., a minor, by and through his mother, Ruth Taylor.

**I.  Factual Background**

On September 25, 2004 at approximately 7:00p.m., A.T., a thirteen year old African American male, got into a fight with another child in his neighborhood, Shahron Polk (Polk). Fearing for A.T.'s safety, his mother called the police.  Officers Kowalski and France were dispatched to the scene and met A.T. and his mother on their front porch.  Apparently, Polk had been harassing A.T. for the preceding few weeks and Ms. Taylor wanted the police to speak to Polk's guardians so that they could stop him from bothering A.T.  During the interview, Ms. Taylor noticed that Polk and some other minors were standing at the end of the street, and pointed them out to the officers.

1

Officer Kowalski left the porch and went to interview the individuals who had been identified by Ms. Taylor as having been involved in the fight with A.T.  Officer France stayed behind on the porch with Ms. Taylor and A.T.  Ms. Taylor then left the porch and began running down the street towards Officer Kowalski, Polk, and the group of minors. Officer France did not order Ms. Taylor to stay on the porch.  As Ms. Taylor was running she tripped and fell, causing the group of minors to laugh at her.  When he saw his mother fall, A.T. became upset and ran from the porch in the direction of his mother, Officer Kowalski and the group of minors.  A.T. left the porch despite being told not to by Officer France.  A.T. alleges that he ran towards the group because he was worried for his mother's safety.

When Officer Kowalski saw A.T. running towards the group, he gave A.T. loud, verbal commands to stop and return to the porch. Although A.T admits that he heard Kowalski's order, he refused to comply.  Officer Kowalski testified that when he attempted to grab A.T.'s arm, A.T pulled away from him. At that point, Kowalski grabbed A.T. by the arms, swung him around, slammed him to the ground and put a knee in his back.  Although A.T. was only thirteen years old, he was approximately six feet tall and 200 pounds.  Officer Kowalski asserts that he believed that A.T. was going to attack Polk for laughing at his mother, and that he therefore used an "arm bar takedown to get him on the ground" (Kowalski Depo at p.33) in order to prevent an assault on Polk or someone else. An arm bar takedown is a standard police technique.  See *Infra* pp. 11-12.  A.T. was then  handcuffed and placed in the back of the cruiser.  As a result of the takedown, the plaintiff suffered a dislocated shoulder which required surgery. Neither A.T. nor his mother were charged with any crimes.

On September 22, 2006, plaintiff filed his complaint, alleging numerous federal and state law claims against the City as well as the two officers. Against the officers, plaintiff alleged violations of 42 U.S.C. §§ 1983 and 1985, assault and battery, intentional infliction of emotional distress, and excessive force, wrongful imprisonment or detention, illegal search and seizure and negligence. Against the City, plaintiff alleged negligent hiring, negligence and recklessness in retaining the officers, and violations of 42 U.S.C. §§ 1983 and 1985.

Defendants filed their motion for summary judgment on May 5, 2008. After a continuance, plaintiffs filed their response on July 3, 2008. Defendants filed their reply on July 16, 2008. In their motion for summary judgment, defendants allege that the plaintiff has failed to establish material elements of his federal and state claims and that the defendants are entitled to immunity under federal and state law. The plaintiff has elected not to present evidence in support of his federal and state claims against the City, his claims for violations of the Eighth and Fourteenth Amendments, his 42 U.S.C. §1985 claim, and his claim for intentional infliction of emotional distress. Accordingly, the Court GRANTS summary judgment in favor of defendants on those claims. See, Fed. Civ. R. 56(e)(2)(if the opposing party does not respond to a motion for summary judgment, judgement should, if appropriate, be entered against that party). Thus, the only claims left for the Court to consider are the plaintiff's claims against Officers France and Kowalski for violation of 42 U.S.C. §1983, assault, and false imprisonment. For the reasons set forth below, defendants' motion is GRANTED in its entirety.

**II.    LEGAL STANDARD**

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curium).  The party that moves for summary judgment has the burden of showing that there are no genuine issues of material fact in the case at issue, LaPointe, 8 F.3d at 378, which may be accomplished by pointing out to the court that the nonmoving party lacks evidence to support an essential element of its case.  Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).  In response, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993)(quoting Anderson, 477 U.S. at 251-52). The evidence, all facts, and any inferences that may permissibly be drawn from the facts

4

must be viewed in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  See also Eastman Kodak Co. v. Image Technical Servs., Inc., 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.  See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations.  Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

### III.     ANALYSIS

#### A.     42 U.S.C. §1983

To successfully state a claim under 42 U.S.C. § 1983, a plaintiff must identify "a right secured by the United States Constitution and the deprivation of that right by a person acting under color of state law." Adams v. Metiva, 31 F.3d 375, 386 (6th Cir. 1994). Plaintiff alleges that the Defendants violated his Fourth Amendment rights to be free from unreasonable seizure and excessive force. As set forth below, Plaintiff has failed to establish that there remains a genuine issue of fact which would preclude summary judgment.

##### I.     Unlawful Seizure

The Fourth Amendment, which applies to the states through incorporation by the Fourteenth Amendment, protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Ingram v.

City of Columbus, 185 F.3d 579, 591 (6th Cir. 1999) (citing U.S. Const. amend. IV). The "seizure" of an individual takes place when "by means of physical force or a show of authority, his freedom of movement is restrained." United States v. Mendenhall, 446 U.S. 544, 553 (1980).

There is no question that the Officers seized A.T. when they took him to the ground, handcuffed him, and placed him in the back of a police cruiser. State v. Dabney, No. 02 BE 31, 2003 Ohio 5141 (Ct. App. Ohio Sept. 29, 2003) (the act of handcuffing and placing an individual in a cruiser is a show of authority that restrains the liberty of the individual and thus constitutes a seizure). The fact that A.T. was handcuffed does not automatically mandate a finding that he was under "arrest" instead of temporarily detained pursuant to an investigatory Terry stop. See, State v. Quesenberry, No. 99-BA-932001, 2001 Ohio 3267 (Ct. App. Ohio May 24, 2001) (the act of handcuffing may "constitute a reasonable means to detain an individual stopped during an investigatory stop"). A Terry stop requires that an officer have only a reasonable articulate suspicion that a crime has been or is about to be committed while an arrest requires probable cause. See Terry v. Ohio, 392 U.S. 1 (1968). The Court is not convinced that A.T. was effectively under "arrest" when the officers handcuffed him and placed him in the cruiser. However, even if A.T. was under "arrest," the officers had the requisite probable cause to do so. See Michigan v. DeFillippo, 443 U.S. 31, 36 (1979)(the Constitution permits an officer to arrest a suspect without a warrant if there is probable cause to believe that the suspect has committed or is committing an offense).

Probable cause exists where it is shown that, at the moment the arrest was made, the "facts and circumstances within the officer's knowledge that are sufficient to

6

warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979).  The Sixth Circuit has recognized that probable cause demands no more than "a probability or substantial chance of criminal activity." U.S. v. Barrett, 890 F.2d 855, 861 (6th Cir. 1989) (quoting Illinois v. Gates, 462 U.S. 213, 244 n. 13 (1983)).

     The evidence presented supports the conclusion that the officers had probable cause to seize A.T. The parties' accounts of what occurred on the date in question are substantially similar.  A.T. agrees that Officer France told him to stay on the porch and that he refused to do so, choosing instead to leave the porch and run through the field toward his mother, Officer Kowalski, and the other kids.  A.T. also agrees that as he was running in Officer Kowalski's direction, Officer Kowalski told him to "Get back up there" at least twice.  Officer Kowalski testified that when his orders to stop were ignored by A.T., he attempted to grab him and then used the arm-bar take down technique. A.T. has provided no evidence to contradict the officer's testimony that A.T. pulled his arm away leading the officer to then employ the arm-bar take down.  A.T. does not dispute that he failed to stop when ordered to do nor does he assert that Officer Kowalski grabbed him before he was able to stop.  Rather, his testimony essentially echoes that of Officer Kowalski. A.T. was ordered to stop, he did not stop, and that is when Officer Kowalski grabbed him and took him to the ground.   The parties agree that at that point, Officer France helped handcuff A.T. and A.T. was placed in the back of the cruiser.

     When A.T. refused to stop after being ordered to by two different officers, and

7

was running straight towards the group of juveniles who were laughing at his mother, the officers had probable cause to believe that A.T. was about to instigate another fight. The officers knew that A.T. had just been in a fight with Shahron Polk who was now among the group laughing at his mother. There is no evidence that A.T. was slowing down as he approached the group or that he intended to respond in any way to the verbal commands of the officers. Under these circumstances, the officers had probable cause to conclude that A.T. was about to assault a third party and properly detained A.T. in order to prevent an assault.

The Plaintiff has failed to establish a genuine issue of material fact and summary judgment on his federal unlawful seizure claim is granted.

        2.      Excessive Force

The Fourth Amendment's ban on unreasonable seizures sets forth the right of an ordinary citizen to be free from the use of excessive force during an arrest or investigatory stop. See Graham v. Connor, 490 U.S. 386, 394 (1989). Claims of excessive force in the context of arrests or investigatory stops are analyzed under the Fourth Amendment's "objective reasonableness standard." Id. In determining whether an officer's use of force was "reasonable," courts must perform a "careful balancing of the 'nature and intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." Id. (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)). Given that police officers often have to make split-second decisions under tense circumstances, "the reasonableness of an officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Graham, 490 U.S. at 396. In considering the merits of a constitutional excessive force claim, the

court must pay " careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

Construing the facts in a light most favorable to the plaintiff, there is no evidence from which a reasonable jury could conclude that the officers used excessive force in detaining A.T.  The officers had been called to the scene of a reported fight between A.T. and another juvenile in the neighborhood.  When A.T.'s mother fell while running towards Officer Kowalski and the group of minors, everyone in the neighborhood started to laugh, including the young people with whom A.T. had just been involved in a fight. Against this backdrop, A.T. ran from the porch, against Officer France's orders, and headed directly towards the group.  A reasonable officer, seeing A.T., who weighs over 200 pounds and is over six feet tall, charging towards the group of laughing kids, could reasonably conclude that A.T. was about to attack one or more of them.  It was objectively reasonable for Officer Kowalski to make the split second decision to stop A.T. before he could attack someone.  Officer Kowalski attempted to stop A.T. with verbal commands, which were ignored. He then attempted to simply grab A.T's arm, but A.T. managed to pull free of the Officer.  It was therefore reasonable for Officer Kowalski to employ a standard arm-bar take down technique to bring A.T. to the ground so he could be restrained and prevented from harming anyone else. Lane v. Cole, No. 2:03-cv-010148, 2005 U.S. Dist. LEXIS 26102 (S.D. Ohio Oct. 31, 2005) (it was reasonable for an officer to use an arm bar take down after his verbal commands were ignored and a threat of violence existed); Smith v. Ball State University, 295 F. 3d 763

(7th Cir. 2002) (use of arm bar take down and handcuffing of non-compliant suspect was not excessive force); Fox v. DeSoto, 2006 U.S. Dist. LEXIS 38762, 2006 WL 1642294, (W. D. Ky. June 6, 2006) ("use of the 'arm-bar take down' procedure, a standard police procedure, was not an excessive use of force when he feared for the safety of himself and others."); Feldman v. Community College of Allgheney, 85 Fed. Appx. 821, 825 (3rd Cir. 2004) (use of an arm-bar to subdue arrestee was not excessive force in light of arrestee's physical resistance).  Viewing the facts in a light most favorable to A.T., the officers' actions were objectively reasonable, and Plaintiff has failed establish that there is a genuine issue of material fact with regard to this issue.

     As regards Officer France, his involvement in the physical seizure of A.T. was limited to assisting Officer Kowalski in placing the handcuffs and taking A.T. to the patrol car.  Even if Officer Kowalski used excessive force, Officer France could be held liable only if plaintiff produced evidence that Officer France:  1) observed or had reason to know that excessive force would be or was being used, and 2) the officer had both the opportunity and the means to prevent the harm from occurring.  See, Turner v. Scott, 119 F.3d 425, 429 (6th Cir. 1997).  When asked what Officer France did that was harmful, A.T. responded that Officer France "really didn't do anything." (A.T. Depo at ¶ 65).  After A.T. ran from the porch, Officer France drove his cruiser toward Officer Kowalski.  By the time Officer France had reached Officer Kowalski, A.T. had already been brought down by Kowalski using the arm bar take down.  There is simply no evidence that Officer France had the means or opportunity to prevent any alleged harm from occurring.

     Even assuming that the force used was excessive, which this court does not find,

the defendants would be entitled to qualified immunity. Qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Champion v. Outlook National, Inc., 380 F.3d 893, 900-901 (6th Cir. 2004) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The Sixth Circuit evaluates qualified immunity claims using the three-part inquiry: 1) whether a constitutional violation occurred; 2) whether the officer's conduct violated a clearly established constitutional right, and 3) whether plaintiff offered sufficient evidence to indicate that what the officer did was objectively unreasonable in light of the clearly established constitutional rights. When a police officer invokes qualified immunity, the burden is on the Plaintiff to demonstrate that the officer is not immune. Michaels v. City of Vermillion, 539 F. Supp. 2d 975, 982 (N.D. Ohio 2008).

Even assuming that the officers violated A.T.'s constitutional right, the officers are entitled to immunity unless it is demonstrated that the officers violated a clearly established constitutional right. To do so, the plaintiff must show "the prior articulation of a prohibition against the type of excess force exerted here." Champion, 380 F. 3d at 902. Here, the constitutional violation, if there was one, was not clearly established. Rather, as stated *supra*, courts have consistently upheld an officer's right to use an arm bar take down to subdue an individual who is resisting arrest. See e.g. Lane v. Cole, No. 2:03-cv-010148, 2005 U.S. Dist. LEXIS 26102 (S.D. Ohio Oct. 31, 2005) (it was reasonable for an officer to use an arm bar take down after his verbal commands were ignored and a threat of violence existed); Smith v. Ball State University, 295 F. 3d

763 (7th Cir. 2002) (use of arm bar take down and handcuffing of non-compliant suspect was not excessive force).

Finally, the plaintiff has failed to present sufficient evidence that the officers' conduct was objectively unreasonable. The officers attempted to stop A.T. with verbal commands, which were ignored. They then used a standard technique to bring A.T. to the ground so that he could be restrained and prevented from hurting a third party. Herriott v. Craig No. 03-6020-HO, 2005 WL 1653634 (D.Or. July 06, 2005) (armbar technique is routine and reasonable); Fox, 2006 U.S. Dist. LEXIS 38762, (arm bar take down is a standard police procedure); see also, Action-Response Report (doc. 19-7) (which classifies an arm-bar take down as a Control Level 1 (out of 8)). The officers then handcuffed him and placed A.T. in the back of the patrol car. When he informed the officers that his arm was hurt, they called for an ambulance and removed the handcuffs. The use of force was relatively minimal and objectively reasonable under the totality of the circumstances. Johnson v. City of Lincoln Park, 434 F. Supp. 2d 467, 479 (E.D. Mich. 2006) (the ultimate question is whether the totality of the circumstances justified the use of force).

Accordingly, defendants' motion for summary judgment on plaintiff's excessive force claim is granted.

    B.    State Law Claims

        1.    Assault and Battery

In a cause for assault and battery, the plaintiff must demonstrate by a preponderance of the evidence that there was an unlawful attempt, coupled with

present ability, by a person to inflict injury upon the person of another. Campbell v. Turner, No. 40488, 1980 Ohio App. LEXIS 12128 (Ct. App. Ohio May 1, 1980). Force "when used lawfully in making an arrest is in the exercise of a government function, and only in cases where excessive force is used, that is, force going clearly beyond that which is reasonably necessary to make the arrest, can such force be claimed an assault and battery by the person arrested." Schweder v. Baratko, 103 Ohio App. 399, 403, 143 N.E.2d 486, 489 (1957)  In general, a police officer "is not liable for an injury inflicted upon a suspect when he is using reasonably necessary force to overcome any resistance in the act of his duties." Strickland v. Tower City Mgmt. Corp., No. 71839, 1997 Ohio App. LEXIS 5802 (Ct. App. Ohio Dec. 24, 1997).

The Court has already determined that the officers' conduct in detaining A.T. was objectively reasonable and necessary in order to subdue A.T. and prevent an apparent impending attack on a third party. Because the force was reasonably necessary, A.T. cannot establish a claim for assault and battery. Moreover, as set forth below, the officers are entitled to immunity under Ohio Rev. Code § 2744.03.

        2.     False arrest

A claim for false arrest requires the plaintiff to show that a detention occurred without lawful justification. Swift v. Hickey, Case No. C2-02-682, 2006 U.S. Dist. LEXIS 7413 (S.D. Ohio). Under Ohio law, the elements for false arrest are (1) a detention of the person, and (2) an unlawful detention. Faulkner v. Faulkner, No. S-99-008, 2000 Ohio App. LEXIS 19 (Ct. App. Ohio Jan. 7, 2000). One of the elements essential to a claim for false arrest is that the detention occurred without lawful justification. McFinley v. Bethesda Oak Hosp., 79 Ohio App. 3d 613, 616 , 607 N.E.2d 936, 939 (Ct. App. Ohio

13

1992).

The Plaintiff has failed to establish that a genuine issue of material fact remains on this claim.  The Court has already concluded that the officers had probable cause to seize A.T.  The existence of probable case defeats a claim of false arrest.  Napier v. VanCompernolle, Nos. 95-1281/95-1345, 1996 U.S. App. LEXIS 2793  (6th Cir. Feb. 2, 1996); White v. Roch, No. No. 22239, 2005 Ohio 1127 (Ct App Ohio Mar. 16, 2005) (the existence of probable cause to arrest defeats a false arrest claim). As probable cause existed, the defendants' motion for summary judgment on plaintiffs claim for false arrest is granted.

3. Immunity under Ohio Rev. Code 2744.03.

Ohio Rev. Code § 2744.03 affords limited statutory immunity to a political subdivision and its employees, which includes police officers employed by the political subdivision. See Lee v. Pfanner, No. No. E-92-20, 1993 Ohio App. LEXIS 1778 (Ct. App. Ohio Mar. 31, 1993).   However, Ohio Rev. Code § 2744.03(A)(6) specifically provides that an employee is not immune from liability if his "acts or omissions were manifestly outside the scope of his employment or official responsibilities," Ohio Rev. Code §2744.03(A)(6)(a), and his "acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner." Ohio Rev. Code §2744.03(A)(6)(b).  By enacting this statute, "the Ohio legislature has determined that a police officer, for example, cannot be held personally liable for acts committed while carrying out official duties unless one of the exceptions to immunity is established." Cook v. Cincinnati, 103 Ohio App.3d 80, 90, 658 N.E.2d 814, 820 (Ct. App. Ohio 1995).  The statute requires conduct that is "more egregious than simple carelessness." Poe v. Hamilton, 56 Ohio

App. 3d 137, 138, 565 N.E.2d 887, 889 (Ct. App. Ohio 1990).

In this case, the defendant officers were acting within the scope of their employment as police officers when they seized A.T.  Thus the officers are immune from liability unless the plaintiff can show that the officers acted with a malicious purpose, in bad faith, or in a wanton or reckless manner.  Malice is defined as "the wilful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified." Jackson v. Butler County Bd. of County Comm'rs, 76 Ohio App. 3d 448, 602 N.E.2d 363 (Ct. App. 1991). The term "bad faith" connotes a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." Id.  The term "reckless" as used in Ohio Rev. Code § 2744.03(A)(6)(b) means "a perverse disregard of a known risk." Poe v. Hamilton, 56 Ohio App.3d 137, 138, 565 N.E.2d 887, 889 (1990).

A.T. has presented no evidence that the officers acted with an intentional design to inflict harm, or with ill will or dishonest purpose, with a perverse disregard for a known risk.  Rather, the evidence presented establishes that the officers acted within the scope of their duty, in an objectively reasonable manner, and without any intention of harming A.T.  In fact, the record indicates that as soon as the officers were aware that A.T. may have suffered injury, they removed his handcuffs and called an ambulance. There is simply no evidence of conduct on the part of the officers that would exclude them from immunity under Ohio Rev. Code §2744.03(A)(6).

**IV.    CONCLUSION**

For the foregoing reasons, Defendants Motion for Summary Judgment (doc 19) is GRANTED.  The clerk shall enter final judgment in favor of the Defendant dismissing Plaintiff's complaint with prejudice at Plaintiff's cost.

IT IS SO ORDERED.

S/ James L. Graham
James L. Graham
UNITED STATES DISTRICT JUDGE

Date:  September 18, 2008